CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED

March 30, 2026

LAURA A. AUSTIN, CLERK
BY: /s/ M. Poff
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| KEITH EDWARD MOSS, | ) | |
| Petitioner, | ) | Civil Action No. 7:24cv00071 |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| CHADWICK S. DOTSON, | ) | By: Robert S. Ballou |
| Respondent. | ) | United States District Judge |

Keith Edward Moss, a Virginia inmate proceeding *pro se*, has filed a Petition for a Writ of

Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging his 2022 convictions and his 2023

sentence in Lynchburg Circuit Court. The Respondent has filed a Motion to Dismiss, to which

Petitioner has responded. Petitioner has also filed a Motion for Summary Judgment. Upon

consideration of the pleadings, the entire record, and the transcripts, I find that Petitioner's

claims are exhausted and defaulted and without merit to overcome the default. I will grant the

Motion to Dismiss and deny the Motion for Summary Judgment.

## I. BACKGROUND

### A. Factual Background

The events underlying this case began February 13, 2021. Interpreting any evidentiary

conflicts in the light most favorable to the prevailing party at trial, as I am required to do, Officer

Harris of the Lynchburg Police Department responded to a dispatch report around 8:00 p.m. of

two men outside a convenience store, one of whom was displaying a firearm. When he arrived,

no one was immediately outside the convenience store, but he saw two Black men walking in

different directions who met the description reported by dispatch.[1]

---

[1] No testimony was given to explain what description had been provided.

One of the men was Moss, who crossed the street and walked between two dumpsters.[2] Harris described it as "hiding" between the dumpsters.  He, joined by Officer Cox, who had also responded to the area, pulled out weapons, approached the dumpsters, and yelled for Moss to walk towards them.  Moss walked out from the area with his hands in the air and was cooperative initially.  The officers patted him down for weapons, and Moss asked why he had been stopped.  Harris answered that he had crossed the street improperly, with no crosswalk.  The officers found a bottle of cognac that had been opened tucked inside the pocket of his jacket, and when they retrieved the bottle, they also saw a gun holster with no gun.  They proceeded to detain him with handcuffs to conduct a more thorough search, trying to find a gun.  At that point, they testified that Moss, who smelled of alcohol, became upset, again asking why they had stopped him.[3]  When told again that he had crossed the road improperly, he became combative. Several other officers arrived as backup, including Officers Massie, Donellan, and Pritchard. Harris stated that Moss spit on him, and the officers determined to arrest him for assaulting an officer.  Moss resisted being arrested and shackled and started kicking.  Officers Massie and Donellan both punched Moss during the confrontation.  While Officer Pritchard tried to put him in the police vehicle for transport, Moss pinned her against the vehicle with his body and began kicking her legs.  Massey came over to assist Pritchard, getting her away from Moss, and Moss kicked Massey.  Eventually, they got him into the vehicle and took him to the Lynchburg Adult Detention Center, where he was placed in a holding cell.  He was not taken before a Magistrate because he was being extremely combative, and the officers thought it would be dangerous.

---

[2] Moss, who represented himself, explained to the jury during opening and closing argument that he had just left work at his screen print shop (which he owned and ran) next to the convenience store, and was walking home when the police ran up on him with guns drawn and demanded that he come speak to them.

[3] Although Moss never testified, he denied during his closing presentation that he had been drinking and denied that he had a gun holster on him.  No breath or blood tests were introduced into evidence, nor did the officers have the cognac bottle and the holster in evidence, although they introduced a photograph of the holster.

On February 14, Moss put something in the toilet to cause it to flood the cell.  He was demanding to see the magistrate and to get his phone call.  C.O. Hamlett testified that he was getting ready to complete the booking procedure when Moss punched him in the chest.  Corporal Barker came over to assist and was punched in the face.  C.O. Miller came over to help and said he was punched in the arm.  The officers used O.C. spray to get Moss under control.  He was then taken to the shower to decontaminate from the O.C. spray and given clean clothes.  The water to his cell had been cut off when he was returned to the cell.  C.O. Clark brought him clean linens in the early morning hours of February 15 and asked Moss if he planned to use them to flood the cell again.  Moss became verbally abusive, then turned around and mule-kicked Clark in the chest.  Moss was subsequently placed in a restraint chair for several hours.

Around 5:00 p.m. on February 15, correctional officers were escorting Moss to be taken for his booking fingerprints and to make his phone call.  Moss again became combative and got hold of C.O. Henriquez's O.C. spray and sprayed Henriquez with it.  Moss then hit Henriquez with a broom handle, breaking the handle on Henriquez's arm.  Corporal Phillips was coming over to assist when Moss charged him with the broken broom handle and broke it over Phillips's head, causing the handle to disintegrate into pieces.  Moss then got hold of a mop and hit Phillips on the head with that, breaking the handle.  Phillips was diagnosed with a concussion and traumatic brain injury; he had not returned to work at the time of trial and was expected to retire on disability because of his injuries.  Lieutenant Winfield entered, trying to assist the other two officers, and Moss swung the mop at him.  Winfield used evasive action to avoid being hit and then brought Moss to the ground, where they continued to scuffle until Winfield could get Moss into the restraining chair.  During the melee, Moss bit Winfield, breaking skin.  The wound ultimately required stitches.

On February 19, Major Enochs came to Moss's cell because Moss had thrown food all over another officer and would not remove his arm from the food slot.  Enochs and Sgt. Broggins tried to explain to Moss that he was on a 14-day protocol before he could be housed elsewhere in the jail.  Moss still would not cooperate and remove his arm, so Enoch sprayed him with O.C. spray.  Moss then got on the ground as Enoch ordered.  When Enoch opened the cell and entered to cuff Moss, Moss jumped off the floor and became combative.  By the time he secured Moss, Enoch emerged from the cell with blood on his face, bites on his hand, abrasions under his eyes, and a bruised lip.

Moss ultimately received 24 charges by summons and arrest warrants for the series of events.  All were given to him by sliding them under the door of his cell.  Some were nolle prossed[4] or dismissed in General District Court, including the charge for an open container of alcohol and the charge for crossing the street improperly.

## B.  Procedural Background

Moss appeared by video for arraignment on February 23, 2021, and told the judge that he had not been taken before a magistrate.  The judge explained that he would advise Moss of the charges against him and preside over a bond hearing.  Moss was arraigned for 11 counts of assault and battery on law enforcement officers, and one count each of malicious wounding, obstruction of justice, and disorderly conduct.  General District Court Judge Krantz signed a Financial Statement—Eligibility Determination form and appointed the Lynchburg Public Defenders Office to represent Moss.  R. at 46-47.  Moss alleges that he told the court he did not want to be represented by Brad Lindsey (from the Public Defenders' Office).  Dkt. No. 20 at 17.  Bond was denied, and the preliminary hearing was scheduled for June 10, 2021.

---

[4] "Nolle pros," a shortened form of the Latin phrase "nolle prosequi," refers to the Commonwealth's decision to drop the charges.

On March 16, while Moss was at court for a preliminary hearing on an unrelated offense and for a hearing on a pretrial service violation. Brad Lindsey spoke with Moss in lockup and said he would visit Moss at the jail the next day. On March 17, Lindsey and his assistant met with Moss in the visitation booth at the jail. Moss alleges that he explained to them that he had been unlawfully arrested with excessive force and that the arresting officers intentionally failed to take him to the magistrate because they knew he was seriously injured and did not want the magistrate to observe the injuries. He pointed out that Officer Harris signed the warrants, stating that they were served on February 13 at 20:58 (8:58 p.m.) after the magistrate issued the warrants, which was not true. He was arrested before the warrants were issued and kept in the jail, never being taken before the magistrate. Moss asserted that this rendered the warrants invalid. Dkt. No. 20 at 22.

Moss states that he wrote the General District Court a letter on April 21, 2021, explaining that his rights had been violated by appointing Lindsey without advising him of his right to counsel. The court did not respond to his letter but mailed a copy to the Lynchburg Public Defenders Office. On April 28, Lindsey and two assistants visited Moss in the visitation booth, and Moss told them that he did not want to be represented by them or anyone else in the public defender office. Lindsey persuaded him to let the representation continue, because it was in Moss's "best interests." *Id.* at 25-26.

Lindsey and two assistants visited Moss again on June 4, in preparation for the preliminary hearing scheduled for the following week. Moss asked them to file a motion to dismiss because of the officers failing to bring him before a magistrate after his warrantless arrest and for the court violating his right to counsel of his choice. He provided two cases to Lindsey, and Lindsey agreed to review the cases and talk to him again before the preliminary hearing. *Id.*

at 26-27. On June 10, Lindsey spoke with Moss in the court's lockup, advising that he had secured a court reporter for the preliminary hearing and he was not going to file a motion to dismiss because the cases Moss provided involved tampered evidence and were not relevant to Moss's situation. Moss responded that he had prepared his own motion and could present it to the court. Before the hearing, Lindsey told Judge White that Moss had a motion and would like to address the court. Moss told the court that he had never been taken before the magistrate, that he had never been advised of his right to counsel and was being denied his right to counsel of his choice, and moved to dismiss the case. *Id.* at 28-29. Although Moss pointed out that he never signed the financial statement, the court ruled that Moss had been advised of his rights and that his signature was missing because the arraignment had been done by video. She further ruled that his rights had not been violated because counsel had been appointed for him. *Id.* at 31-32. Following the preliminary hearing, several charges were bound over to the grand jury. On July 6, 2021, the grand jury indicted Moss for 12 felony counts of assault and battery of a law enforcement officer, two felony charges of malicious wounding, and direct indictments for misdemeanor obstruction of justice and misdemeanor public intoxication in violation of Lynchburg City Ordinance § 27-10.

Twenty days after the preliminary hearing, Lindsey and the Public Defenders Office withdrew as Moss's counsel, and the court appointed Scott DeBruin to represent Moss. Moss later told the Circuit Court that he tried to speak up at the June 30 hearing to say that he could not retain counsel and wanted to represent himself, but the jailers told him to be quiet. R. at 1090-1091. He first heard from DeBruin in a letter advising that his trial was being continued from September 1, 2021, to January 24, 2022. He had not known about the September court

6

date, and he was not happy about the date being pushed off further.  After January 24 had passed, he received another letter, telling him that his trial was being continued again.  *Id.* at 1091.

On February 1, 2022, Moss appeared in Circuit Court on his motion for a new attorney. DeBruin advised the court that Moss needed new counsel, because communication between them had broken down.  As the court prepared to appoint new counsel, Moss said, "I'd like to proceed *pro se*.  I'd like to proceed *pro se*."  *Id.* at 1082.  The court asked Moss if he had given much thought to such a decision, and Moss said that he had.  The court stated that Moss had some serious felony charges, and if convicted, he faced a mandatory minimum six years just on the charges of assault and battery on law enforcement officers, adding "I would highly discourage you from representing yourself with respect to the seriousness of the felonies that you're charged . . ."  *Id.* at 1083.  Moss adamantly affirmed that he wished to proceed *pro se* and requested a bench trial.  The court again admonished that "I would not advise it with respect to these charges and the seriousness of these charges but you have an absolute constitutional right to represent yourself."  *Id.* at 1084.  The matter was set for the February 7 docket call to be set for trial.

By February 7, 2022, Moss had filed a motion to dismiss on the grounds that he had not received proper process.  Before hearing argument on the first motion, the court asked Moss if he still wished to represent himself, and Moss replied affirmatively.  The gist of his argument was that he had never been properly advised of his right to retain counsel of his choice, be appointed counsel, or represent himself.  Instead, the court improperly appointed the public defenders at the outset of the case and then improperly appointed another attorney on June 30, 2021, when the public defenders' office withdrew.  Moss complained about lack of communication and poor representation from both "improper" attorneys, and he asked the court to dismiss the charges.

7

The court denied the motion to dismiss, noting that dismissal is not a proper remedy for problems with one's attorney. The proper remedy is to have the attorney removed and a new attorney appointed, not to dismiss the charge. Because Moss had said he wanted to represent himself, the court had not appointed another attorney but would gladly do so if Moss wanted one. The judge further stated that Moss's motions "indicate the very reason you need to have counsel represent you because I don't think you understand what the potential remedies are even for the motions that you're making." *Id.* 1092. Moss, unfazed by the court's explanation, continued to argue that he was entitled to relief for the violation of his right to counsel that occurred on February 23, 2021, when he was not given his right to choice of counsel and counsel was "forced" on him by the court. The Commonwealth Attorney pointed out that choice of counsel does not apply to court-appointed representation. The judge explained that Moss's right to counsel was ongoing, not something that started and ended on a particular date. Further, noting that the record reflected he had been advised on February 23, 2021, the judge found that he had been properly advised. R. at 1098.

After denying the motion to dismiss, the court turned to scheduling the matter for trial. By this time, Moss decided he wanted a jury trial. The court decided to appoint standby counsel and asked Moss if there was an attorney he would feel comfortable with acting as standby counsel to advise him. Moss asked for Carlos Hutcherson, and that is who the court appointed.

On June 1, 2022, the court heard argument on several motions to dismiss filed by Moss. Moss renewed his argument to dismiss because the court erred in its duty to advise him of his right to counsel as required by Virginia Code §§ 19.2-157 through 19.2-160. Next, he argued that the charges should be dismissed because the arrest procedure was improper, in that he had

never been taken before the magistrate.  Finally, he argued that his speedy trial rights had been violated.  The court denied all three motions.

Other discovery motions were argued on June 1, July 13, and July 27, 2022.  As relevant to this habeas petition, the main discovery issue was whether the Commonwealth timely produced video discovery requested by the defendant.  The Commonwealth asserted that she had turned over a hard drive with two videos from the jail security cameras and footage from 27 body-worn cameras to Moss's former attorney, Mr. DeBruin.  Because the drive had taken several days to produce, she did not want to have to do so again.  The court ordered DeBruin to turn the drive and any other discovery over to Mr. Hutcherson, Moss's standby counsel.  Moss continued to express frustration afterwards on July 27, saying that he had only been able to watch videos through the glass between himself and Mr. Hutcherson in the visitation booth, and he could not hear anything on the video.  R. at 1219, 1223.  The court indicated a willingness to continue the trial if Moss needed more time to review discovery or finish preparing for trial.  *Id.* at 1233.

On August 2, 2022, the morning of trial, Moss told the court he wished to present a motion to suppress.  He said he did not have time to put it in writing.  The court allowed him to put the basis of his motion on the record.  Moss argued that he was unlawfully arrested (seized) because he allegedly spit on an officer, and the video did not corroborate that accusation.  *Id.* at 1256.  The court explained that any contradictions in the evidence were to be resolved by the jury, including whether he spit on the complaining officer.  The court further declined to hear evidence or argument on the motion because it was untimely and not in writing, as required by Virginia Code § 19.2-266.2.  Moss argued that he could not make the motion earlier because he had just seen that particular body-camera video over the weekend before trial.  However, the

9

Commonwealth had introduced an affidavit from Mr. DeBruin, stating that he had gone to the Blue Ridge Regional Jail, shortly before he moved to withdraw from the case, to show the videos to Moss, and Moss refused to watch them. R. at 1245. Moss did not deny this, stating only that he was very frustrated with his attorney because he had been asking about the videos for months. Claiming that he was ill-prepared for trial because of discovery delays, he requested a continuance, which the court denied, finding that his refusal to cooperate with counsel was the primary reason he had not reviewed discovery several months before trial. *Id.* at 1246-1249.

A jury was then selected, and trial began on 12 counts of assault and battery of a law enforcement officer or corrections officer in the course of duty, two counts of malicious wounding, and one count each of obstruction of justice and public intoxication. At the conclusion of the Commonwealth's case, the court granted a motion to strike the assault and battery charge against Officer Witcher. During closing arguments, Moss emphasized the events of February 13, 2021, when officers ran up on him with guns drawn and frisked him, then cuffed and searched him, stating that they had stopped him for crossing the street outside a pedestrian walkway, and he became angry and afraid. He denied spitting on the officer, denied that he had been drinking, denied having a gun or holster, and denied that the Cognac in his jacket had been opened. Once he got to the jail, they didn't take him to the magistrate or let him call his family. The theme of his case was that "none of this would have happened" if the law enforcement officers had behaved in a more professional and truthful manner and taken him to the magistrate like they were supposed to. *Id.* at 1347.

The jury retired to deliberate on August 3. On August 4, 2022, the jury returned its verdict, finding Moss not guilty of assault and battery against Officers Harris and Massie and Correctional Officer Miller. The jury also found him not guilty of public intoxication. They

found him guilty of the remaining charges, eight counts of assault and battery of a law enforcement or corrections officer, malicious wounding of Cpl. Phillips and of Lt. Winfield, and misdemeanor obstruction of justice.

After receiving and considering a presentence report, the court held a sentencing hearing on December 21, 2022. The court sentenced Moss to 2 years on each assault and battery of a law enforcement or corrections officer, with 1.5 years suspended on each; 10 years for each malicious wounding, with four years suspended on each; and 12 months for obstruction of justice, for a total sentence of 36 years, 12 months, with 28 years suspending, leaving an active sentence of 16 years and 12 months, 4 years of which were mandatory minimum sentences for the eight assault and battery convictions. The final order was entered January 3, 2023.

Moss appealed his convictions to the Virginia Court of Appeals. Originally, appointed counsel failed to file an opening brief, resulting in dismissal of the case on May 10, 2023. The court granted a motion for delayed appeal on December 7, 2023. The court affirmed the convictions on April 23, 2025. Moss did not appeal that decision to the Supreme Court of Virginia.

On July 24, 2023, after his appeal had been dismissed and before he was granted a delayed appeal, Moss filed a petition for habeas corpus in the Supreme Court of Virginia, raising the following issues:

1. Unlawful search and seizure, excessive force, and failure to take him before a magistrate as required by Va. Code §§ 19.2-83.6 and 19.2-82.

2. Unlawful deprivation of a judicial determination of probable cause for his arrest and detention.

3. No sheriff, jail officer, nor correctional officer signed any of Moss's three commitment orders that were "forged by the magistrates".

4. The final order of judgment dated August 4, 2022, was not signed pursuant to Virginia Supreme Court Rule 1:1, and therefore, the mandatory requirements of Code § 19.2-307 were ignored and the Virginia Department of Corrections' receipt of Moss into custody did not comply with the requirements of Virginia Code § 19.2-310.

On December 1, 2023, the Supreme Court of Virginia found that Moss's claims were procedurally barred, because the issues should have been raised in a direct appeal, not in a habeas petition.

On August 2, 2023, while his state habeas was still pending, Moss filed a motion in Circuit Court to vacate his convictions and void the judgment against him on the following grounds:

1. The officers who arrested him unlawfully searched and seized him and erred by not bringing him before a magistrate or other judicial officer forthwith, failing to comply with the mandatory requirements of Code § 19.2-82.

2. The trial court ignored the requirements of Code § 19.2-183.1 on March 3, 2021;

3. During the preliminary hearing on June 10, 2021, the court ignored the requirements of Code § 19.2-183.

4. The order of final judgment entered August 2, 2022, was not signed in accordance with Virginia Supreme Court Rule 1:1.

5. The sentencing order entered January 3, 2023, was void and unlawful because the mandatory requirements of Code § 19.2-307 were ignored.

The trial court denied the motion on August 14, 2023, for failure to state sufficient grounds. Moss appealed to the Court of Appeals of Virginia, which transferred the appeal to the Supreme Court of Virginia on January 12, 2024.  The Supreme Court of Virginia refused the appeal on August 27, 2024.

Moss's petition in this court was mailed January 25, 2024, well within the statute of limitations.  He raised the following claims:

Claim 1 - False imprisonment, as the police officers who arrested Moss subjected him to a warrantless search and seizure, used excessive force, and failed to bring him before a magistrate or other authority as required by Virginia Code § 19.2-82.

Claim 2 - Jurisdictional defect, as petitioner was not arrested on the charges he was convicted of, thus the court lacked jurisdiction over the petitioner's criminal cases.

Claim 3 - Extrinsic or collateral fraud, as all public records in Moss's criminal cases were forged.

Claim 4 - Void or unlawful sentence, as the Commonwealth's law enforcement officers, judicial officers, and agents ignored the mandatory requirements of 14 Virginia code sections.

Respondent filed a Motion to Dismiss, asserting that Moss's claims were not properly exhausted.  Plaintiff responded to the motion and simultaneously filed a Motion for Summary Judgment in his favor.

## II.  DISCUSSION OF MOTION TO DISMISS

### A.  Standard of Review

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint. The court must accept as true all factual allegations in the complaint and reasonable inferences from those facts.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  If, accepting those facts as true,

the complaint fails to show a plausible entitlement to relief from the defendants, the motion to dismiss must be granted.

## B.  Limitations on Habeas

A federal court may grant a petitioner habeas relief from a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of *the United States.*"  28 U.S.C. § 2254(a) (emphasis added).  Federal courts reviewing constitutional claims adjudicated on the merits in state court may grant relief on such a claim only if the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d)(1)-(2).  A federal district court reviewing a § 2254 petition is also limited by the separate by related doctrines of exhaustion, procedural default, and independent and adequate state law grounds.  The standard of review and these procedural doctrines promote the principles of finality, comity, and federalism, recognizing a state's legitimate interests in enforcing its laws, preventing disruption of state judicial proceedings, and allowing states the first opportunity to address and correct alleged violations of a state prisoner's federal rights.  *Coleman v. Thompson*, 501 U.S. 722, 730–31 (1991).

A habeas petitioner is required to exhaust his claims in state court before his claims can be considered in federal court.  28 U.S.C. § 2254(b)(1)(A).  To exhaust his claims, a petitioner must present his federal constitutional claims to the highest state court, on the merits, before he is entitled to seek federal habeas relief.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  If a petitioner still has the right to pursue a state remedy by any available procedure, he has not exhausted his claim.  28 U.S.C. § 2254(c).  Further, the petitioner must present to the state court

14

the same operative facts and the same controlling legal principles that he seeks to present to the federal court. *Kasi v. Angelone*, 300 F.3d 487, 501–02 (4th Cir. 2002). Failure to do so deprive[s] the state courts of an opportunity to address those claims in the first instance." *Coleman*, 501 U.S. at 732.

A separate but closely related issue is the doctrine of procedural default. If a state court has clearly and explicitly denied a petitioner's claim based on a state procedural rule that provides an independent and adequate ground for the state court's decision, that claim is procedurally defaulted for purposes of federal habeas review. *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). A state procedural rule is independent if it does not depend on a federal constitutional ruling, and it is adequate if it is firmly established and regularly applied by the state court. *Yeatts v. Angelone*, 166 F.3d 255, 263–64 (4th Cir. 1998). A claim that has not been presented to the highest state court and would be procedurally barred as untimely or successive if the petitioner tried to present the issue to the state court now is considered simultaneously exhausted and defaulted. *Bassette v. Thompson*, 915 F.2d 932, 936–37 (4th Cir. 1990).

Before a federal court will consider granting relief on a procedurally defaulted claim, the prisoner must show both cause for the default and actual prejudice as a result of the claimed federal violation. *Coleman*, 501 U.S. at 750. Cause for procedural default requires the existence of some objective factor, external to the defense and not fairly attributable to the prisoner. *Id.* at 756–57. To show prejudice to overcome procedural default, a petitioner must show that the claimed violation worked to his "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982).

## C. Discussion

Respondent contends that (1) some of Moss's claims were not exhausted when he filed his petition in this court, (2) none of the claims presented in the current petition were raised in his direct appeal, and (3) even if Moss had raised his claims in the direct appeal, they are defaulted, because he never presented his direct appeal to the Supreme Court of Virginia on the merits.

The Virginia Supreme Court held that the issues raised in the state habeas were procedurally defaulted because they had not been raised in the direct appeal, and habeas may not be used as a substitute for the appeal process. Virginia has long adhered to the rule that issues that could be raised on direct appeal cannot be raised in a state habeas proceeding. *See, e.g., Slayton v. Parrigan*, 205 S.E.2d 680, 682 (Va. 1974). Likewise, the federal courts have recognized this as an independent and adequate ground for procedural default under state law. *Mu'Min v. Pruett*, 125 F.3d 192, 194 (4th Cir. 1997). Petitioner's first claim in this court—unlawful seizure, excessive force, and failure to take him to a magistrate—was raised in the state habeas but considered defaulted. This court must treat that issue as procedurally defaulted. Some of the challenges to his sentence in claim four were also raised in the habeas and considered procedurally defaulted by the state, but not all of them. It is too late for him to raise the additional code sections for state consideration. Accordingly, this court must treat the extra issues in claim four as exhausted but defaulted. I will have to determine if Moss can overcome his procedural default on issues one and four.

Moss raised some of his Claim Four challenges to his sentence in his Motion to Vacate. That motion was filed in August 2023, long after the Circuit Court had lost jurisdiction over the

16

criminal case. Under Virginia Supreme Court Rule 1:1, a circuit court loses jurisdiction over a matter 21 days after entry of the final judgment, unless otherwise provided by law. A motion to vacate filed long after the court has lost active jurisdiction over the case cannot be used as a substitute for a habeas corpus petition. *Jones v. Commonwealth*, 795 S.E.2d 705, 719 (Va. 2017). A narrow exception has been made if a motion to vacate challenges an order that is void *ab initio*. Moss claims in his summary judgment motion that the sentencing issues raised in his motion rendered his convictions and sentence void *ab initio*. Both the circuit court in denying the motion and the Supreme Court by refusing the appeal implicitly held that Moss's convictions and sentence were not void *ab initio*. Because the motion was still pending before the Virginia Supreme Court when Moss filed his petition in this court, the claim was not exhausted at the time he filed his federal habeas petition. That is the only time that matters for exhaustion, so the claim is not exhausted, and the court cannot usually grant relief for the unexhausted issue. Further, if I considered the merits of the issue, under § 2254(d)(1)-(2), I would be bound by the state court's determination of that issue unless it is clearly contrary to federal law, based on an unreasonable application of federal law, or based on an unreasonable determination of the facts.

Claims 2 and 3 of Moss's federal habeas petition were not raised in his state habeas, direct appeal, or in his motion to vacate. It is too late for him to bring those claims in state court now, so I will treat them as simultaneously exhausted and defaulted.

Moss has neither offered any reason for failing to raise some issues in his state proceedings, nor given any explanation for filing his federal habeas petition before exhausting the issues he raised. Thus, he has failed to show cause for his procedural defaults which bars him from prevailing on any of these claims. That alone would warrant granting the Respondent's Motion to Dismiss. However, a habeas petition can be denied on the merits even if the claims

17

have not been properly exhausted in the state courts.  28 U.S.C. § 2254(b)(2).  Because I have

determined that his claims lack merit, and therefore, the actions he complains of did not

prejudice his trial, I find that judicial efficiency will be served by addressing and denying his

claims on the merits.

1. **Claim 1 - False Imprisonment—Unlawful Seizure, Excessive Force, and Failure to Take Moss Before a Magistrate.**

Unlawful seizure issues arise under the Fourth Amendment of the Constitution.

However, as long as a state provides the opportunity for full and fair litigation of a Fourth

Amendment claim, the claim is not cognizable on habeas review.  *Stone v. Powell*, 428 U.S. 465,

494 (1976).  Had Moss properly filed a written motion to suppress at least seven days before

trial, the trial court would have ruled on the motion and Moss could have appealed an adverse

decision to the Court of Appeals and then to the Supreme Court of Virginia.  Thus, Virginia

provided Moss the *opportunity* to raise Fourth Amendment claims and litigate them.  *Doleman v.*

*Muncy*, 579 F.2d 1258, 1265 (4th Cir. 1978).  Having failed to take advantage of the opportunity,

he is precluded by *Stone* from raising the issue on habeas review.  *Sallie v. North Carolina*, 587

F.2d 636, 639 (4th Cir. 1978).

Excessive force and false arrest are not grounds for dismissal of criminal charges.

Rather, they are grounds for civil lawsuits for damages under 42 U.S.C. § 1983.[5]  *See Hendon v.*

*Hayes*, No. 1:24-cv-173-GCM, 2024 WL 4808427, at **4, 6 (W.D. N.C. Nov. 15, 2024)

(allowing excessive force claim to proceed but dismissing request to dismiss criminal charges).

False arrest and malicious prosecution claims cannot prevail absent proof of favorable

---

[5] Moss is evidently aware of his rights under § 1983, having filed such a suit arising from this case nearly one year before he filed this habeas petition.  *See Moss v. Trent*, No. 7:23-cv-00110.

termination of criminal prosecution in favor of accused. *Heck v. Humphrey*, 512 U.S. 477, 484 (1994).

Finally, failure to take Moss before a magistrate may violate a Virginia statute, but it does not violate the Constitution. The Fourth Amendment requires a magistrate or judicial officer to make an informal and neutral assessment of probable cause, but that does not require a personal appearance of the accused at the probable cause determination. *Jones v. Town of Marion*, 508 S.E.2d 921, 924 (Va. Ct. App. 1999). A magistrate's probable cause determination is governed by the same criteria whether an arrest warrant is sought before the arrest or after a warrantless arrest. One who is arrested on an outstanding warrant has not had the opportunity to appear in front of the magistrate before the warrant was issued; neither is there a constitutional requirement that the accused appear before the warrant is issued after his warrantless arrest. *King v. Jones*, 824 F.2d 324, 326–27 (4th Cir. 1987). Because failure to take Moss before the magistrate is only a matter of state law, not a federal or constitutional requirement, Moss cannot obtain federal habeas relief for this issue. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).

Claim 1 fails to assert any grounds for which habeas relief may be granted.

### 2. Claim 2 - Jurisdictional Defect Because Charges of Conviction Differ From Charge of Arrest.

If each charge of which Moss was convicted was screened for probable cause, by a grand jury, a preliminary hearing, or other comparable method authorized under Virginia law, it does not matter the charge for which Moss was originally arrested. He does not have to be placed under arrest at all to be subject to prosecution and trial. "When the Commonwealth seeks to prosecute an adult for a felony, it has several options how to proceed, including direct indictment, presentment, information, or arrest warrant followed by a preliminary hearing in the general district court." *Armel v. Commonwealth*, 505 S.E.2d 378, 379 (Va. Ct. App. 1998)

(internal quotation and citation omitted).  In fact, "that an original arrest may have been unlawful does not affect the jurisdiction of the court nor preclude the trial of the accused for the offense." *Town of Front Royal v. Dawkins*, No. 6588, 1983 WL 210258, at *1 (Warren Co. Cir. Ct. March 30, 1983) (citing *Payton v. New York*, 445 U.S. 573 (1980)).  As the Court in *Payton* observed, legality of arrest does not impact validity of a prosecution itself, only the admissibility of certain evidence at trial.  *Payton*, 445 U.S. at 591.

Moss's convictions were not based on evidence obtained as a result of his arrest; rather, they were based on new crimes he committed after his arrest, and that is substantially different. Claim 2 fails to state a claim for which relief may be granted.

### 3.  Claim 3 - All Public Records in Moss's Criminal Cases Were Forged.

Moss asserts that "all" public records in his case were forged and uttered by law enforcement and by judicial officers.  He does not identify the specific records that are supposedly forgeries or who forged them, and he offers no facts to support his conclusory claims. When deciding a motion to dismiss, the court need not accept legal conclusions, speculative assertions, and conclusory statements.  *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023). Even if Moss had properly exhausted this claim, it would not have survived a motion to dismiss because a presumption of validity applies to warrants issued by a judicial officer, and Moss's conclusory allegations are insufficient to overcome that presumption.  *Lebedun v. Commonwealth*, 501 S.E.2d 427, 434 (Va. Ct. App. 1998).

### 4.  Claim 4 - Void or Unlawful Sentence.

Moss alleges that his sentence is void because the circuit court violated the following Virginia procedural statutes - Va. Code §§ 8.01-271.1, 8.01-398, 19.2-72, 19.2-82, 19.2-157, 19.2-158, 19.183, 19.2-183.1, 19.2-242, 19.2-243, 19.2-265.3, 19.2-265.4, 19.2-307, and 19.2-

310.  A violation of state procedural law or a state statute does not provide grounds for federal habeas relief unless the state statute codifies a recognized federal constitutional law.  *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).  Second, they have nothing to do with the validity of Moss's sentence.

Virginia Code §§ 8.01-271.1 and 8.01-398 both fall under Title 8.01, *Civil* Remedies and Procedures, and do not apply to Moss's case.  Failure to comply with § 8.01-271.1 renders an improperly signed pleading voidable, which is not the same as void.  Va. Code § 8.01-271.1(A).  Further, failure to raise the issue of a signature defect before the trial court's jurisdiction expires under Supreme Court Rule 1:1(a) and Rule 1:1B waives the defect.  *Id.* at § 8.01-271.1(E).  Code § 8.01-398 applies to a person's right to refuse to disclose the substance of confidential communications with a spouse in a civil proceeding.  Moss's trial was not a civil proceeding, but a criminal one.  Further, his girlfriend, not his spouse, was subpoenaed *by the defendant* and testified at the trial.  R. at 1174, 1741-1746.

Code § 19.2-72 explains the process for issuing an arrest warrant executed on a defendant by a law enforcement officer or jail officer.  Section 19.2-82 requires a magistrate to make a probable cause determination after a warrantless arrest.  Failure to present a defendant to the magistrate under § 19.2-82 is a "mere procedural violation" and does not rise to the level of a constitutional violation.  *Frye v. Commonwealth*, 345 S.E.2d 267, 273 (Va. 1986).  Violation of any of the procedural statutes regarding a defendant's appearance before the magistrate are mere procedural violations, unless the failure to do so deprives a defendant of exculpatory evidence, which is then a violation of due process.  *Horne v. Commonwealth*, 339 S.E.2d 186, 190–91 (Va. 1986).  Moss has suggested that he was not taken before the magistrate because the officers did not want the magistrate to see the injuries sustained when the officers were "beating on him

inside of the van" in which he was transported to the jail, and no photos were taken of his injuries. R. at 1917. This is not exculpatory evidence; the conduct resulting in the charges brought by the Lynchburg police officers occurred before he was in the van and could not be exculpatory for those offenses. Nor would his injuries be exculpatory for his conduct against the jail officers 24 hours later.

Code §§ 19.2-157 and 19.2-158 address the duties of the court to advise a defendant of his right to counsel before any hearing is held on the charges against the defendant. Contrary to Moss's allegations, General District Court Judge A. Ellen White found as a matter of fact that Moss had been properly advised of his right to counsel. Dkt. No. 20, pp. 30–31. Circuit Court Judge F. Patrick Yeatts, also made the same factual finding. R. at 1098. In a habeas proceeding, a factual determination made by a state court must be presumed correct; the presumption can be overcome only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Based on the state court factual findings, there was no violation of these code sections. Even if there had been a violation in the way the procedures were carried out, the Supreme Court of Virginia has held that these procedural guidelines are not jurisdictional. *Van Sant v. Commonwealth*, 295 S.E.2d 883, 886 (Va. 1982). A judgment is not rendered automatically void by non-jurisdictional procedural violations.

Code §§ 19.2-183 and 19.2-183.1 involve preliminary hearing procedures. Preliminary hearing in a general district court is not constitutionally required. *Armel*, 505 S.E.2d at 379. Any failure to comply with state statutory procedures is beyond the purview of a federal habeas court. *Estelle*, 502 U.S. at 67–68. Further, Moss fails to state how these sections were violated. As § 19.2-183.1 applies to preliminary hearings against joint defendants (two or more defendants

22

charged with the same crime or crimes), and Moss was the only defendant charged, it is not apparent that there was any procedural violation, much less a constitutional one.

Code §§ 19.2-242 and 19.2-243 are the state's codification of speedy trial rights. Moss argued violation of his statutory speedy trial rights on June 1, 2022, but the trial court denied the motion, finding that all continuances after the first court date had been requested by defense counsel or necessitated by Moss's requests to fire counsel, represent himself, and proceed with a jury trial instead of a bench trial. Moss has not explicitly argued speedy trial in his habeas petition or anywhere else beyond the trial court. He has offered nothing to overcome the presumption of correctness attached to the trial court's finding that his statutory rights were not violated. Most importantly, by basing his argument on the state speedy trial statute, he has failed to allege a Sixth Amendment constitutional violation. Violation by state officials of a state speedy trial law does not present a federal claim reviewable on habeas review. *Poe v. Caspari*, 39 F.3d 204, 207 (8th Cir. 1994). Moss has never asserted in any of his pleadings that a violation of the state speedy trial statutes deprived him of his constitutional speedy trial rights under the four-factor balancing test announced by the Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 515 (1972).

Virginia Code § 19.2-265.3 states that the court may allow nolle prosequi of charges against a defendant for good cause shown. That is a state procedural rule and raises no constitutional issue for a federal habeas court's consideration. Likewise, § 19.2-265.4 deals with the Commonwealth's failure to provide discovery. "There is no general constitutional right to discovery in a criminal case, and *Brady*[6] did not create one." *United States v. Dugan*, 136 F.4th 162, 170 (4th Cir. 2025) (quoting *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). Moss has

---

[6] *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (holding that suppression of evidence favorable to the accused upon request violates due process, whether relevant to guilt or sentencing, regardless of the prosecutor's good faith).

never alleged that he did not receive discovery of exculpatory evidence in time to use it favorably at trial.  Further, the trial court found as a matter of fact that the Commonwealth Attorney had complied with her discovery obligations.  R. at 1227, 1249.

Finally, Virginia Code § 19.2-307 states what the contents of a judgment order should include, and § 19.2-310 directs notification of the sentence to the Department of Corrections and procedure for transporting the prisoner from the jail where he is held until space is available in the Department of Corrections.  Neither of these procedural state statutes are appropriate for consideration in a federal habeas claim, nor does any deviation from the procedure render the conviction or sentence void.

This claim has no merit and will be dismissed.

### III. MOSS'S MOTION FOR SUMMARY JUDGMENT

#### A. Standard of Review

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A fact is material if it could affect the outcome of the trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence presented would allow a reasonable factfinder to find in favor of the non-moving party.  *Bhattacharya v. Murray*, 93 F.4th 675, 686 (4th Cir. 2024).  Further, the court must view the facts and reasonable inferences from them in the light most favorable to the nonmoving party.  *Id.*  In a habeas case, the limitations on the court's authority remain as well, meaning that the petitioner must have exhausted his remedies or show cause and prejudice for default in order to prevail on his habeas claims.

Contrary to Moss's assertion, he is not entitled to judgment as a matter of law.  If he were, the respondent's motion to dismiss would be denied.  As discussed in the previous section,

24

however, Moss's habeas claims were not properly exhausted, and they had no merit. Because they had no merit, he could not meet his burden of showing prejudice from procedural default and failure to exhaust. Nor are the "facts" he avers to be undisputed agreed to by the respondent. Many of his numbered paragraphs are statements drawn from case law, and others are simply erroneous legal conclusions, not facts. While those with legal education would consider some of Moss's arguments to border on frivolous, recognizing that he is a *pro se* litigant, I will try to explain sufficiently for a layperson to understand why I reject his extra arguments. *See United States v. Blue*, 877 F.3d 513, 519 (4th Cir. 2017) (holding that a sentencing court must acknowledge a defendant's nonfrivolous arguments, and if it rejects those arguments, must explain why in a sufficiently detailed manner).

## B. Discussion

Moss's arguments/alleged facts in support of his motion for summary judgment can be divided into seven themes. I will address each theme, explaining why the facts are not as Moss alleges and the law does not apply in the way that he asserts.

### 1. Sentencing Order is Void *Ab Initio.*

The topic of void judgments can be confusing because of the terminology used, as a merely voidable order becomes void when reversed on appeal or set aside on collateral review by a court with proper jurisdiction to consider the matter. A judgment that is void *ab initio*, or "void from the beginning," is "so affected by a fundamental infirmity that it is no judgment at all." *Hannah v. Commonwealth*, 899 S.E.2d 621, 626 (Va. 2024). The Supreme Court of Virginia has rejected the language that such an order can be challenged "by all persons, anywhere, at any time, or in any manner." *Mast v. A.A.*, 925 S.E.2d 665, 682 (Va. 2026). Further, only a court can declare a judicial order void *ab initio*.

Virginia recognizes only five situations that create judgments that are void *ab initio* and subject to challenge at any time where the validity of the order is an issue:  (1) Judgments obtained by fraud on the court; (2) lack of subject matter jurisdiction; (3) lack of personal jurisdiction over the defendant; (4) judgment beyond the court's power to render; (5) the court's adoption of an unlawful procedure.  *Hannah*, 899 S.E.2d at 626.  Most judicial errors, however, involve errors made within the judge's authority and render a judgment voidable, not void *ab initio*.  Errors rendering judgments voidable include failure to follow precedent or failure to comply with an applicable statute.  *Id.* at 627.  In such cases, the judgment is valid unless and until it is overturned in a proper appeal or timely collateral proceeding.  To raise such errors, an objection must be preserved in the trial court and properly raised in timely and proper appeals and collateral proceedings.  Failure to preserve these errors waives them.

Fraud on the court is self-explanatory but must be shown by clear and convincing evidence. In looking at jurisdictional challenges to the validity of an order, only lack of subject matter jurisdiction or lack of personal jurisdiction can render a judgment void *ab initio*.  Subject matter jurisdiction is the authority or power granted by a constitution or statute to decide a certain type of case.  *Porter v. Commonwealth*, 661 S.E.2d 415, 426 (Va. 2008).  For example, circuit courts in the Commonwealth have jurisdiction to preside over jury trials; general district courts do not.  Circuit courts in Virginia have original jurisdiction over all felony indictments in Virginia.  Va. Code § 17.1-513.  A Virginia circuit court judge would have no authority to preside over an indictment issued by a court in North Carolina; any judgment from such a trial would be outside the court's subject matter jurisdiction.  The 16-count indictment against Moss was issued by a Virginia grand jury and relating to actions which occurred in the City of Lynchburg, so the circuit court had subject matter jurisdiction to try the criminal charges against Moss.

The Due Process Clause of the Fourteenth Amendment limits a state court's personal jurisdiction to those who are physically present in the state or who have engaged in conduct within the state such that being required to defend themselves in that state would not be seen as unfair. This is based on federalism limits on state sovereignty. The state has authority only within its borders. In exercising authority over someone outside its borders, a state cannot infringe on another state's right to control what happens in that other state. *Fuld v. Palestine Liberation Org.*, 606 U.S. 1, 11–14 (2025). A Virginia court would not have authority to enter judgment against someone who was never in the state of Virginia for an offense completely committed in another state. In Moss's case, he was physically present in Lynchburg, Virginia, at the time of all offenses with which he was charged, so there is no lack of personal jurisdiction.

A judgment is beyond the power of a court which imposes a sentence beyond the statutory range prescribed for an offense. *Rawls v. Commonwealth*, 683 S.E.2d 544, 549 (Va. Ct. App. 2009). For example, the statutory range for malicious wounding is 5 to 20 years. Had the judge imposed a life sentence for one count of malicious wounding, that would be beyond his authority, rendering the judgment void *ab initio*. Conversely, if the judge incorrectly defined "malice" as used in the statute, that would be an error that renders the judgment voidable, but the judgment would still be valid unless properly appealed and reversed.

Only one case has relied on the court's adoption of an unlawful procedure to find a judgment void *ab initio*. In *Collins v. Shepherd*, a court had adopted a local rule, pursuant to Virginia Code § 8.01-4, providing that the Clerk of Court would send a notice of dismissal to plaintiff's counsel for any civil action not served within one year. *Collins v. Shepherd*, 649 S.E.2d 672 (Va. 2007). Collins' suit was dismissed with prejudice under that local rule. Six months later, he filed a motion to vacate the dismissal order and reinstate the case on the docket.

The defendant objected, arguing that the dismissal order had become final under Virginia Supreme Court Rule 1:1. On appeal, the court held that § 8.01-4 authorized adoption of local rules, but provided that the rules could not be inconsistent with state statutes, decided cases, or Rules of the Supreme Court, nor could the rules abridge the substantive rights of the parties or deprive a party of the opportunity to present the merits of their case. *Collins*, 649 S.E.2d at 676. The local rule was not consistent with the statutes or the Supreme Court Rules. Rule 3:5(e) requires the plaintiff to demonstrate due diligence to serve the defendant within the year but did not provide for sua sponte dismissal of such a case. Further, Virginia Code § 8.01-355 allows a court to discontinue a case from the docket after two years, with 15 days' notice to the parties, unless a party requests that the matter be continued. Further, the statute provides that the matter can be reinstated within one year, on motion and with notice to the other parties. After three years with no order or proceeding, the statute permits the court to dismiss the case sua sponte but requires a copy of the order to be sent to the parties. Again, on motion with notice to other parties, the case can be reinstated within one year. The Supreme Court of Virginia held that the court had unlawfully adopted a procedure that was inconsistent with the Virginia Code and abridged the parties' rights by drastically shortening the time in which a case could be removed from the docket, failing to distinguish between discontinuing a case and dismissal with prejudice, and not providing a mechanism for reinstating the case on the docket. Because the court had adopted an unlawful procedure, the order dismissing Collins' case was void *ab initio*. *Collins*, 649 S.E.2d at 678.

None of the five circumstances recognized as a fundamental infirmity exist in Moss's case. Simple failure to comply with a statute raises an ordinary court error, rendering an order merely voidable, not void. *Battista v. Battista*, No. 0586-24-4, 2025 WL 3006419, at *4 (Va. Ct.

28

App. 2025) (holding that failure to provide mother's employment information, if required by Virginia Code § 20-60.3(4), would not render a support order void *ab initio*).  Even if Moss had valid arguments about error in his case before the trial court, the errors raised did not render the sentencing order a nullity, and he waived (or defaulted) his objections by not timely raising them in the trial court and/or failing to continue his appeal to the state's highest court.

### 2.  The Court Lost Jurisdiction By Violating Moss's Right to Counsel.

Moss argues that he was deprived of his right to counsel, which he claims is a jurisdictional defect, relying on *Johnson v. Zerbst*, 304 U.S. 458, 465 (1938).  First, as discussed in section II(C)(4) of this opinion, the state court found that Moss was properly advised of his rights, a factual finding this court is not free to disregard on habeas review.  Second, the court appointed counsel for Moss at his initial appearance. This counsel met with Moss several times before the preliminary hearing and represented him at that hearing.  When that attorney withdrew, the court promptly appointed another attorney.  When his relationship with the second attorney deteriorated, the court was prepared to appoint a third attorney, but Moss insisted that he wished to represent himself, despite the court's efforts to talk him out of that decision.  That is vastly different from *Johnson*, in which the defendant had gone to trial with no counsel, did not know he had the right to counsel, was unable to obtain an attorney for himself, and was never advised of his right to counsel.  *Id.* at 466.

Moss's complaints that his attorneys were improperly appointed are without merit, as are his complaints that he was denied counsel of his choice.  If he had the ability to retain counsel, he could have done so.  Defendants or their family members often hire attorneys who appear on a defendant's behalf; all the attorney must do is notify the court and send in an order substituting counsel. The reality is that Moss could not afford an attorney.  That is what he told the Circuit

29

Court. R. at 1090-1091. A criminal defendant's right to counsel of choice is the right to choose the attorney he can afford to hire; if he needs appointed counsel, his right is only to be represented by a competent attorney appointed by the court. *United States v. Marshall*, 872 F.3d 213, 218 (4th Cir. 2017) (citations omitted). Moss may have believed that neither of the attorneys the court appointed were providing adequate representation. But, that is not grounds for dismissal of the charges against him. As the trial court advised him, the remedy is to request new counsel. When one chooses to represent himself, even though the court strongly recommends that he not do so, he has not been denied counsel. He has made the choice to represent himself.

At no time was Moss denied counsel. He either had an attorney appointed or he chose to represent himself. Because he was not denied an attorney, there was no error, jurisdictional or otherwise.[7]

### 3.  Horrible Jail Conditions and Disciplinary Procedures Void Conviction.

Moss wrote several paragraphs about the jail conditions and how he was allegedly treated, from use of the restraint chair to solitary confinement, being cut-off from communication with his family, denied medical care, and receiving time in segregation for his assaults on corrections officers. None of these issues entitles Moss to dismissal of his lawsuit. Just like excessive force and false imprisonment, his complaints about jail conditions may be the subject of a civil suit under 42 U.S.C. § 1983, but they have no bearing on the validity of his criminal prosecution. *Hendon*, 2024 WL 4808427, at **4, 6.

---

[7] In the early days of this country, habeas corpus was available only to federal prisoners, and a conviction could be challenged only on jurisdictional grounds. In 1867, Congress enacted a statute extending habeas rights to state prisoners restrained in violation of the Constitution or laws of the United States, but the courts continued restricting habeas to jurisdictional challenges. Between 1915 and 1938, the Supreme Court began expanding the concept of jurisdiction to correct egregious wrongs. *Johnson v. Zerbst* was one of those cases in which the Court granted habeas even though the convictions were "in all meaningful respects, rendered by a state court of competent jurisdiction." Brian R. Means, *Introduction to Habeas Corpus* 30-31 (2018). In 1942, the Court eliminated the requirement that habeas petitions be limited to jurisdictional grounds. *Waley v. Johnston*, 316 U.S. 101 (1942) (per curiam).

**4. Arrest Warrants were Invalid Because Moss was not Taken Before Magistrate.**

As discussed in section II(C)(4), failure to take Moss before the magistrate is a procedural violation, not a constitutional violation. *Frye*, 345 S.E.2d at 273; *Horne*, 339 S.E.2d at 190–91. The failure to take him before the magistrate also does not affect the validity of the warrant in any way. As a condition of restraining someone's liberty before trial, the Fourth Amendment requires a fair and reliable determination of probable cause, by a neutral judicial officer, either before or promptly after arrest. *Gerstein v. Pugh*, 420 U.S. 103, 125–26 (1975); *McGuire v. Commonwealth*, 525 S.E.2d 43, 50 (Va. Ct. App. 2000). It is not necessary for the defendant to appear personally before the magistrate for a probable cause determination. Magistrates issue arrest warrants pre-arrest, based on probable cause, without the appearance of the accused; they are equally able to make the same determination of probable cause immediately after the arrest, without the defendant's presence. *King*, 824 F.2d at 326–27. The magistrate promptly considered the officer statements to determine that probable cause justified the arrest, and he issued warrants.

**5. Ineffective Assistance of Counsel.**

Moss suggests that his public defender was ineffective in representing him because he would not file a motion to dismiss based on the officers' failure to take him before the magistrate and failure to advise him of his right to counsel; instead, he allowed Moss to raise the issue. When reviewing performance of counsel, courts apply a highly deferential standard. A petitioner must show that (1) counsel's performance was so deficient that he was not functioning as counsel guaranteed by the Sixth Amendment *and* (2) that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Petitioner must meet both prongs of the test, as deficiency alone is inadequate, as is prejudice without deficiency.

Deficient performance requires a showing that counsel's representation fell below "an objective standard of reasonableness . . . under prevailing professional norms." *Id.* at 688. The reviewing court must not rely upon "the distorting effects of hindsight," but must presume that counsel's decisions and actions fell within the wide range of reasonable strategy decisions. *Id*. at 689–90. Under *Strickland*, a reviewing court strongly presumes that counsel rendered adequate decisions and that all significant decisions were made in the exercise of reasonable judgment. 466 U.S. at 690.

Trial strategies, including what motions to make and arguments to raise, are matters for which the attorney is entitled to make the decision. *Gonzalez v. United States*, 553 U.S. 242, 248–49 (2008). Without evidence that a motion has a realistic chance of being granted, a petitioner cannot demonstrate that counsel's decision not to make a motion is unreasonable. Counsel is certainly not unreasonable for refusing to file a futile motion. *Moody v. Polk*, 408 F.3d 141, 151 (4th Cir. 2005).

Nor can Moss show any prejudice from counsel refusing to file the motion. For the reasons discussed throughout this opinion, Moss's argument that the charges should be dismissed because he was not taken before a magistrate and not advised of his right to counsel was without merit. Because there is no deficient performance and no prejudice, Moss was not denied the right to effective assistance of counsel.

6. **Officer Harris's Testimony  Is Not Sufficient To Support Probable Cause.**

Moss argues that Officer Harris's testimony at the preliminary hearing was insufficient to support probable cause. Along with this, he suggests that his acquittal is proof that there was no probable cause. Probable cause, however, is different from guilt beyond a reasonable doubt. For

that reason, acquittal of an offense is irrelevant to the validity of an arrest warrant. *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979).

Probable cause exists if the facts and circumstances presented to the judicial officer are sufficient to warrant a reasonable person to believe that an offense has been committed. *McGuire v. Commonwealth*, 525 S.E.2d 43, 47 (Va. Ct. App. 2000). Probable cause is more than mere suspicion, but it is much less than sufficient to convict beyond a reasonable doubt. *Slayton v. Commonwealth*, 582 S.E.2d 448, 451 (Va. Ct. App. 2003). "The substance of all the definitions of probable cause is a reasonable ground for belief of guilt. And this means less than evidence which would justify condemnation or conviction." *Brinegar v. United States*, 338 U.S. 160, 175 (1949) (citations and internal quotation marks omitted).

An officer's sworn testimony that Moss spit on him is sufficient probable cause to believe that Moss might be guilty. That jurors acquitted Moss of this charge after hearing and seeing more evidence does not change the reasonableness of the earlier probable cause determination.

### 7.  His Arrest was Unlawful, so Moss had the Right to Resist.

Whether Moss's arrest was unlawful and if so, his right to resist, were issues submitted to the jury, with proper jury instructions. A jury is presumed to have followed the instructions of the trial court. *Hamilton v. Commonwealth*, 817 S.E.2d 343, 352 (Va. Ct. App. 2018). The jury found Moss not guilty of assaulting Officer Harris, assaulting Officer Massie, and public intoxication. They convicted him of obstruction of justice and of assault and battery of Officer Pritchard on that same date. This would suggest that the jurors concluded that Moss did not have the right to resist at the time Officer Pritchard was trying to put him in the van. Even if he had the right to resist his arrest on February 13, he did not have the right to assault the corrections officers on February 14, 15, and 19. The jury verdicts suggest that the jurors listened carefully to

33

the evidence, the arguments, and the instructions.  They were not convinced of anything Officer

Massie or Officer Harris said about what happened, not even the alcohol.  When other officers

arrived on the scene who had not run up on Moss with guns drawn and had not said they were

stopping him for crossing the street, the jury determined that his resistance was no longer

justified.  Ample evidence supports their verdict.

### IV. Conclusion

For the reasons stated, I will grant the respondent's motion to dismiss and deny Moss's

motion for summary judgment.  I find that Moss has failed to make a substantial showing of the

denial of a constitutional right, as required by 28 U.S.C. § 2253(c), and I will deny a certificate

of appealability.

An appropriate order will be entered this day.

Enter:  March 27, 2026

/s/ Robert S. Ballou

Robert S. Ballou
United States District Judge

34